UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:19-CV-00193-RGJ-LLK

MORGAN RAE PETTY                                                              PLAINTIFF

v.

BLUEGRASS CELLULAR, INC.                                                     DEFENDANT

## OPINION & ORDER

Judge Rebecca Grady Jennings referred this matter to U.S. Magistrate Judge Lanny King for resolution of all litigation planning issues, a scheduling conference, entry of scheduling orders, consideration of amendments thereto, resolution of all non-dispositive matters, including discovery issues, and to conduct a settlement conference in this matter at any time. [DN 9].

This matter is now before the Court on seven motions. First, on September 14, 2020, Zanda Myers, a non-party and Plaintiff Morgan Petty's, ("Petty's"), former attorney, filed her Motion to Quash Subpoena because "[t]he only information the Defendant could possibly obtain from taking [sic] the undersigned's deposition is subject to attorney-client privilege which has not been waived by Morgan Rae Petty." [DN 34 at 2]. On September 16, 2020 Bluegrass filed their response. [DN 36]. Bluegrass argues that they are entitled to non-privileged information concerning the August 30, 2016 subpoena, and privilege has been waived by Petty. *Id.* at 3-6.

Second, on September 12, 2020, the Court was contacted by Bluegrass requesting a status conference to discuss several discovery disputes. And on September 16, 2020, the Court conducted a telephonic status conference with all parties in attendance, [DN 35]; during which the Court granted Bluegrass leave to file a Motion to Compel, [DN 38]. Bluegrass proceeded to file their Motion to Compel Deposition Testimony and Document Production, [DN 39]. They seek deposition testimony and document production related to the August 30, 2016 subpoena. *Id.* Petty

1

filed her response on October 2, 2020.  [DN 42].  Petty argues that this information is protected by privilege, waiver did not occur, and, even if it did, that the Court ought to issue a Rule 502 order stating that it did not.  *Id.*  Further briefing consisted of a reply from Bluegrass asserting, again, that waiver was effectuated, and that 502(c) further prevents waiver.  [DN 43].

Third, following the October 19, 2020 telephonic status conference granting leave, [DN 46], Bluegrass filed a second Motion to Compel deposition testimony, [DN 47], that same day. Bluegrass seeks "deposition testimony concerning the text messages that Bluegrass produced in response to the August 30, 2016 subpoena in Petty's child custody action."  *Id.* at 1.  Petty responded, [DN 50]; arguing that there is no duty to disclose, that her prior supplemental response makes further testimony unnecessary, and that she and the implicated third parties have a privacy right.  [DN 50].  Briefing was concluded with Bluegrass's reply.  [DN 52].

Fourth, also on October 19, 2020, Petty filed her Motion to Quash the subpoena for medical records served to Baptist Health Urgent Care.[1]  [DN 49].  Plaintiff argues that the requested records are irrelevant to the case and that disclosure would be violative of HIPPA.  *Id.*  On October 23, 2020, Bluegrass responded, arguing that mental health evidence is relevant to the emotional distress claims and that the Plaintiff's HIPPA argument is unfounded.  [DN 51].  Briefing concluded with Petty's reply on October 28, 2020.  [DN 57].

Fifth, On October 26, 2020, Petty filed her Motion to Compel Depositions, [DN 53], three days after the deadline ordered by this Court, [DN 46].  Petty argues that she ought to be permitted to depose Ron Smith as the testimony would not be cumulative or duplicative.  *Id.*  Bluegrass

---

[1] On October 16, 2020, the Court conducted a status conference with all parties in attendance, [DN 35], where this Court granted the parties leave to file three of the present motions: (1) Plaintiff was granted leave to file a Motion to Quash Defendant's subpoena to Baptist Health Urgent Care; (2) Defendant was granted leave to file a Motion to Compel Plaintiff's responses to certain deposition questions; and (3) Plaintiff was granted leave to file a Motion to Compel regarding her 30(b)(6) and fact depositions of Defendant, [DN 46].

responded on October 30, 2020, arguing that Petty cannot depose Ron Smith due to "Apex Doctrine", because it is unreasonably cumulative and duplicative, and because it creates an undue burden. [DN 56]. Briefing was completed with Petty's reply on November 13, 2020. [DN 62].

Sixth, relating to the same underlying depositions, Bluegrass filed their Motion for Protective Order, [DN 55]. The Court previously noted that Bluegrass neither requested nor was granted leave to file this motion. [DN 59]. To guard the docket from future confusion, this Court amended the briefing schedule: Petty was to file one document, responsive to both Bluegrass's response and motion. *Id.* However, after filing the above-mentioned reply, [DN 62], Petty filed her response, [DN 63].

Finally, on December 17, 2020 Defendant contacted the Court requesting a status conference to discuss a discovery dispute that arose when they served a subpoena on Shelton Forensic Solutions. And on December 21, 2020, the Court conducted a status conference with all parties in attendance, [DN 65], where this Court granted Defendant's leave to file a motion regarding its intent to obtain those records, [DN 69]. Defendant then filed their Motion to Compel, [DN 68], to which Petty filed her response after the briefing deadline expired, [DN 70].

The Motions are now fully briefed and ripe for adjudication. For the reasons set forth herein, Zanda Myers Motion to Quash Subpoena, [DN 34], is **GRANTED**, Defendant's Motion to Compel Deposition Testimony and Document Production, [DN 39] is **GRANTED**, Defendant's Motion to Compel Deposition Testimony, [DN 47], is **GRANTED**, Petty's Motion to Quash, [DN 49], is **DENIED**, Plaintiff's Motion to Compel Depositions, [DN 53], is **DENIED**, Bluegrass Motion for Protective Order, [DN 55] is **GRANTED**, and Defendant's Motion to Compel Shelton Forensic Solution, [DN 68], is **GRANTED**.

**Relevant Background**

This matter arose when Bluegrass produced Petty's text messages in response to a subpoena in a custody proceeding between Petty and Benjamin Adkins. [DN 1 at 4]. Petty argues that Bluegrass is liable because it "wrongfully divulged the private correspondence in response to [the] subpoena *duces tecum* which was issued by the opposing party in a civil action." [DN 5-1]. Specifically, Petty alleges that immediately before a hearing in the Grayson County Action on November 7, 2016, text messages that Bluegrass produced were provided to Petty and her attorney, Zanda Myers. [DN 31-2]. And that by producing these text messages without consent, Bluegrass violated the Stored Communication Action, ("SCA"). [DN 1 at 4]. Meanwhile, Bluegrass asserts that their service was proper and that, prior to November 7, 2016, they served Zanda Myers with a subpoena. [DN 4-1 at 6-7].

Since then the parties have proceeded with discovery, including depositions, interrogatories, and document production. During which the parties have encountered numerous discovery disputes. This matter is currently before the Court on seven motions.

**Standards**

Federal Rule of Civil Procedure 26(b)(1) states:

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

A party "resisting discovery bears the burden to establish that the material either does not come within the scope of relevance or is of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Invesco Int'l*

*(N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). To resist discovery that appears

relevant, the respondent "bears a heavy burden of demonstrating that disclosure will work a clearly

defined and very serious injury." *Id.* (citing *Empire of Carolina, Inc. v. Mackle,* 108 F.R.D. 323,

326 (S.D.Fla.1985).

Relevance is to be "construed broadly to encompass any matter that bears on, or that

reasonably could lead to other matter that could bear on" any party's claim or defense. *Albritton*

*v. CVS Caremark Corp.*, No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky.

June 28, 2016) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). However,

the scope of discovery is not unlimited. "On motion or on its own, the court must limit the

frequency or extent of discovery . . . if it determines that . . . the burden or expense of the proposed

discovery outweighs its likely benefit, considering the needs of the case, the amount in

controversy, the parties' resources, the importance of the issues at stake in the action, and the

importance of the discovery in resolving the issues." *Id*. (quoting FED. R. CIV. P. 26(b)(1). And

Federal Rule of Civil Procedure 26(b)(2)(C) outlines circumstances where the Court must limit

the scope of discovery:

> (i) the discovery sought is unreasonably cumulative or duplicative,
> or can be obtained from some other source that is more convenient,
> less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to
> obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule
> 26(b)(1).

Ultimately, the determination of "the scope of discovery is within the sound discretion of the trial

court." *Cooper v. Bower*, 2018 WL 663002, at *1 (W.D. Ky. Jan. 29, 2018), *reconsideration*

*denied*, 2018 WL 1456940 (W.D. Ky. Mar. 22, 2018) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).

## Discussion

### *Deposition of Zanda Myers*

There are two issues in the deposition of Petty's former attorney: whether the testimony is privileged and whether it is sufficiently relevant.  First, attorney client privilege is a broad protection.  Specifically, the Rules of Civil Procedure define the scope of discovery as follows: "Parties may obtain discovery regarding any matter, *not privileged,* that is relevant to the claim or defense of any party ...."  FED. R. CIV. P. 26(b)(1) (emphasis added).  The Rules make clear that privileged material, even relevant privileged material, is not discoverable.

However, Bluegrass correctly points out that attorney-client privilege may be waived when put at issue.  [DN 36 at 4].  "The privilege may be implicitly waived by claiming ineffective assistance of counsel or by otherwise raising issues regarding counsel's performance."  *In re Lott*, 424 F.3d 446, 452–53 (6th Cir. 2005).  Therefore, Petty waived privilege when she put the prior service of the subpoena at issue, and specifically when she asserted her prior counsels' negligence in handling the subpoena and notice to her as a client.  [DN 7 at 4, DN 31-3 at 5].

"[T]he attorney-client privilege cannot at once be used as a shield and a sword."  *In re Lott*, 424 F.3d at 454 (6th Cir. 2005) (quoting *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991).  This is precisely what would be allowed to occur if the Court were to permit Petty to bring her claim with this evidence while not allowing Defendants a chance to challenge it through the discovery process.  Thus, Zanda Myers testimony regarding the dates of service and notice to her former client are not protected by privilege; leaving only the question of whether it ought to be quashed in light of the Rule 26 analysis.

The facts surrounding service of this subpoena and notice to her client are clearly relevant to the parties, where those facts are central to Bluegrass' motion for judgment on the pleadings, [DN 31].  However, to order the deposition of Petty's former lawyer in this case would be unreasonably cumulative or duplicative as it can be obtained from another more convenient and less burdensome source.  FED. R. CIV. P. 26(b)(2)(C).  Specifically, Bluegrass's stated reason for the discovery sought is to find out "[t]he date Myers was served with the August 30, 2016 subpoena" [DN 36 at 4].  And Bluegrass has thoroughly demonstrated that Petty has possession of documents with information about both her attorney's receipt of the subpoena and her own notice. [DN 31-1, 36-2].  As discussed below, where the Court has Granted Defendant's Motion to Compel documents and Defendant's other Motion to Compel testimony, it would be unreasonable to require the deposition of the prior attorney where the information is being obtained from alternate sources.

***Petty's Documents and Testimony relating to communications with her attorney***

Bluegrass requests the Court compel Petty to provide deposition testimony and produce documents "related to the August 30, 2016 subpoena, including but [not] limited to all communications between [her] and her former counsel Zanda Myers [sic]" [DN 39 at 8-9].  For reasons identical to those given in the preceding section, the testimony and documents are not protected by privilege[2] and are deemed relevant by the Court.  In addition, where Petty withheld

---

[2] Petty asserts that "inadvertent waiver does not obliterate attorney-client privilege." [DN 42 at 6].  However, to support her position she cites to two unfavorable, out of circuit, cases.  In *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, the court granted the parties motion for the return of the documents after the party inadvertently produced documents it had identified in the privilege log.  2000 WL 744369, at *14 (S.D.N.Y. June 8, 2000).  This is opposite to the case here, where rather than avoiding the issue of the 2016 Subpoena, Petty has put it at issue. Worse, in *S.E.C. v. Cassano*, the court denied the plaintiff's motion for the return of the documents after the party inadvertently produced documents.  189 F.R.D. 83, 86 (S.D.N.Y. 1999).  Additionally, it must be stated that Petty's actions cannot be interpreted as inadvertent—Petty has made this issue central to the litigation, citing this information in much of her briefing.

testimony from Bluegrass that was entitled, she shall be prepared to testify on her prior communication with Zanda Myers.

Still, Petty argues that "the court has authority to issue a rule 502(d) order[.]" [DN 42 at 7]. Rule 502(d) states: A federal court *may* order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court — in which event the disclosure is also not a waiver in any other federal or state proceeding. FED. R. CIV. P. 502(d) (emphasis added). Neither party cited law on this rule. Other courts in the district have rejected application of 502 where the disclosure was not unintentional. *Kentucky ex rel. Beshear v. Marathon Petroleum Co., LP*, 2017 WL 2272082, at \*3 (W.D. Ky. May 24, 2017). Further, nothing in the language of the rule requires court action—the "may" is explicitly permissive. Accordingly, the Court declines to issue any order under Rule 502.

Finally, Bluegrass also requested "the Court enter an Order compelling Petty to produce all documents responsive to Bluegrass' Request for Production of Documents No. 7 that Petty has not otherwise produced." [DN 39 at 8]. As these documents deal with the same substantive material as the granted request, to the extent that discovery was withheld with respect to the first request for documents, Petty is to produce those documents now. [DN 39 at 6].

### Petty's Testimony providing Information about Text Messages

Defendant's Motion to Compel requests that the Court compel Plaintiff "to answer questions concerning the text messages Bluegrass produced in response to the subpoena, including but not limited to the identity of persons associated with the texts and the circumstances surrounding the texts." [DN 47 at 2]. Generally, a party may obtain discovery of any non-privileged matter that is relevant to any issue in the case. FED. R. CIV. P. 26(b)(1). Specifically,

this Court must "consider[] the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Petty asserts that her emotional distress claims "do not create an obligation to disclose." [DN 50 at 3]. However, "[w]hen [Plaintiff] put her emotional state at issue in the case, she waived any such privilege, and the records may come in[.]" *Maday v. Pub. Librs. of Saginaw*, 480 F.3d 815, 821 (6th Cir. 2007) (citing *In re Zuniga,* 714 F.2d 632, 637 (6th Cir. 1983)).  Here, Petty claims that third party review of her text content resulted in emotional distress "in excess of $2.7 million."  [DN 16].  And she maintains that "each individual message is an individual violation." [DN 50 at 5].  Thus, Bluegrass is entitled to explore the factual basis surrounding these claims; particularly the identities of the persons in the text messages and circumstances surrounding them.

Petty argues that her supplemental response to their Interrogatory No. 7 provided a meaningful opportunity for the Defendant's to challenge these text messages.  [DN 50 at 5].  This is not the case.  Petty failed to answer the interrogatory; instead providing two vague lists of categories that the tens of thousands of texts might fall into.  [DN 50-2].  Bluegrass shall not be expected to guess which identifying category applies to which text.  In any case, even if Petty had categorized the text messages, these categories provide little in the way of identifying information and entirely ignore the five categories that *were* identified by Bluegrass.  *Id.*  The Defendant properly points out that "Bluegrass should not have to take Petty's self-serving assertions that she was damaged at face value; it is entitled to discovery on the texts to determine if Petty actually suffered harm to her friendships or her career, and the most straightforward way to determine this

is to obtain the identities of those she exchanged text messages with and the context surrounding the texts.  [DN 52 at 3].

Petty further argues that she and the message senders and recipients have "a reasonable expectation of privacy for any and all text message correspondence."  [DN 50 at 5].  And that the "content of these electronically stored communications is subject to Fourth Amendment protection."  *Id.* *(*citing *United States v. Warshak,* 631 F.3d 266 (6th Cir. 2010)).  However, as *Warshak* explains, a private entity such as Bluegrass cannot be implicated, because the "purpose of the Fourth Amendment 'is to safeguard the privacy and security of individuals against arbitrary invasions by government officials.'"  *Warshak,* 631 F.3d at 283 (6th Cir. 2010) (citing *Camara v. Mun. Ct.,* 387 U.S. 523, 528 (1967)).  Thus, the information is not protected by the fourth amendment, and Bluegrass is entitled to discovery related to the text messages.

### *Petty's Medical Records*

The Health Insurance Portability and Accountability Act of 1996 ("HIPAA") protects patient privacy by preventing healthcare providers from disclosing protected healthcare information.  Here, Petty is asserting that "[a]bsent any waiver of HIPAA's privilege protections by Ms. Petty, the divulgence of her private medical records is prohibited."  [DN 49 at 4].

There are two issues in the disclosure of these documents and information: whether they are sufficiently relevant and whether HIPPA permits the disclosure.

Petty correctly asserts that privacy rights attach to the doctor-patient relationship.  *In re Zuniga*, 714 F.2d 632, 641 (6th Cir. 1983).  However, these rights were waived when Petty put her emotional state at issue in this case.  *Maday*, 480 F.3d at 821 (6th Cir. 2007).  In this circuit, district courts have held that the assertion of emotional distress waives privilege.  *O'Malley v. NaphCare*

*Inc.*, 311 F.R.D. 461, 468 (S.D. Ohio 2015) ("[Plaintiff's] medical records are relevant to her claim for emotional distress damages"); *Maysey v. Henkel Corp.*, No. 1:17CV-00108-GNS, 2018 WL 314859, at *3 (W.D. Ky. Jan. 5, 2018) (holding that "placing one's mental health at issue constitutes a waiver of the privilege."); *Witschger v. E.I. DuPont de Nemour & Co.*, 2012 U.S. Dist. LEXIS 160902, at *3 (S.D. Ohio Nov. 9, 2012) ("to the extent plaintiff seeks damages for emotional distress, his medical records are relevant[.]"); *Noble v. Ruby Tuesdays Restaurants, Inc.*, 2007 WL 3125131, at *2 (S.D. Ohio Oct. 23, 2007) ("Plaintiff's medical records are relevant to any claim for emotional distress or mental anguish."); *Ross v. Bachand*, 2016 U.S. Dist. LEXIS 3436, at *10 (E.D. Mich. Jan. 12, 2016); ("[Plaintiff] placed her medical records at issue in this case by filing claims for emotional distress damages. As long as [Plaintiff] seeks such non-economic damages, [Plaintiff's] medical records are relevant and discoverable.")

While Petty cites to several cases for the principle that claims of emotional distress do not waive privilege, they fail to address the claim at hand. First, in *St. John v. Napolitano*, the court found that privilege was not waived for "garden variety" emotional distress claims, but, first, the claims at issue here are notably more severe than a "garden variety" and, second, this case is conspicuously out of circuit and explicitly outlines the three-way split on the issue. 274 F.R.D. 12, 18 (D.D.C. 2011)

Petty also cites to *Mann v. University of Cincinnati,* which, while seemingly undermining waiver in the circumstances of this case, cannot be followed here. The matter before that court, while related to the disclosure of medical records, was primarily focused on the discovery violations by the Defendants' attorneys, where the privacy analysis is specifically tied to "the circumstances of this case". *Mann v. Univ. of Cincinnati*, 152 F.R.D. 119, 126 (S.D. Ohio 1993), *aff'd,* 114 F.3d 1188 (6th Cir. 1997)

Finally, Petty cites to two cases that, rather than justifying broad privacy rights, outline the limitations of the privacy right's scope.  In *Whalen*, the court was tasked with determining whether the New York Statute mandating the non-consensual sharing of patient records invaded a patient's privacy rights and found that there is no reasonable expectation that medical history will remain completely confidential.  *Whalen v. Roe,* 429 U.S. 589, 603 (1977).  And in *Zuniga*, the court found that the patient's privacy interest was correctly outweighed by the grand jury's need to conduct an effective investigation.  *In re Zuniga*, 714 F.2d 632, 642 (6th Cir. 1983).

Second, HIPPA allows a covered entity, such as Baptist Health Urgent Care, to disclose protected healthcare information "[i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order."  45 C.F.R. § 164.512(e)(1)(i).  So, HIPPA does not prevent disclosure in this instance.

### *Depositions of Ron Smith*[3]

Federal Rule of Civil Procedure 30(b)(6) sets forth the substantive rule regarding the depositions of corporate representatives:

> (6) Notice or Subpoena Directed to an Organization.  In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination.  The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.  A subpoena must advise a nonparty organization of its duty to make this designation.  The persons designated must testify about information known or reasonably available to the organization.  This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

---

[3] As the filing at 55 is identical to the filing at 56, and the filing at 62 is identical to the filing at 63, all analysis on the motion to compel will be imputed to that of the protective order.

FED. R. CIV. P. 30(b)(6).  To properly comply with the rule, the party must name an "entity" (not a specific director within the entity) and describe the testimony requested.  Then it is the onus of the entity to designate their 30(b)(6) witness(es) to testify on those specific topics.  Here, Plaintiff is attempting to abuse Rule 30 where she insists only on the most senior member of the firm, and emailed her notice of deposition two days before the unilaterally chosen time; providing no topics with which they could prepare or designate witnesses to answer.  [DN 56-5]

Bluegrass correctly asserts that "Bluegrass President and CEO Ron Smith should be prevented because he lacks relevant, unique personal knowledge about Petty's claims that cannot be obtained through less intrusive and less burdensome discovery methods." [DN 56 at 11].  The Defendant goes on to assert that "Federal courts have applied the 'Apex doctrine' to determine whether the deposition of a high-ranking executive is warranted. . . . " which they explain means "Petty must satisfy a heightened burden before deposing high-ranking employees like Bluegrass CEO and President Ron Smith.  However, the Defendant's reliance on Apex Doctrine is flawed. The Sixth Circuit has criticized the rule for abandoning the Rule 26 requirements to justify a protective order: that harms "must be illustrated with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004)).  In *Serrano* the Court ultimately held that the court below "erred as a matter of law in relying on 'apex doctrine' to grant the protective order.'  *Id*. at 902.  Thus, while the potential probative value of the testimony and potential burden to the deponent are highly relevant to Rule 26 analysis, it would be an error of law to rely on Apex Doctrine.

Even so, where Bluegrass provides not just reasons why Ron Smith lacks relevant testimony that could be obtained through other avenues, but also the requisite demonstration that

the proposed depositions would be for the purpose of harassing, annoying, and placing an undue burden or expense on Bluegrass. In this case, both Rule 26(b)(1)(i) and 26(b)(1)(ii) are implicated where Petty seeks cumulative and duplicative testimony that she had ample opportunities to obtain.

Petty enumerates the following reasons for the depositions: (1) deletion of emails; (2) obtain "clarity" regarding "policies for responding to legal requests"; (3) explore Petty's "emails to the company prior to filing this action"; (4) "company protocols for responding to legal requests that [sic] were put into place in 2018"; (5) explore "industry standards for retaining the contents of subscriber text messages"; (6) obtain information on "any company efforts to inform third-parties of a massive data breach"; and (7) explore "other matters relevant to the action." [DN 53 at 2-3, 5]. The Court will analyze each of the stated reasons for discovery sought in turn.

First, Petty mischaracterizes proceedings when she states that "email correspondence relevant to the matters cited in this action have [sic] been deleted." [DN 53 at 2]. The deposition testimony clearly shows that Robin Fentress was testifying to deleting emails from her personal Outlook inbox, not that the company destroyed evidence. [DN 53-4].

Second, Petty has already received information about Bluegrass's protocols for responding to legal requests. [DN 53 at 2, DN 56 at 17]. Specifically, Bluegrass has produced all documents relevant to responding to legal requests for text messages. [DN 56-7]. Further, Petty had the opportunity to ask Bluegrass's Senior Compliance Administrator Chrissy Sanders, Director of Customer Support Robin Fentress, and Manager of Compliance and Helpdesk Operations Thomas Daugherty questions regarding the protocols. In the case of both Chrissy Sanders and Robin Fentress, she indeed asked these questions. [DN 56-1; 56-10]. And while Petty argues that she exhausted alternatives, this is not the case. Indeed, on the same day that she requested to depose CEO Ron Smith, she cancelled her deposition of Thomas Daugherty. [DN 53 at 1-2, 56 at 6].

14

Further, in Robin Fentress's case, rather than bolstering a claim that Ron Smith may have testimony with probative value on the question, the testimony reveals that he rarely deals with the relevant department. [DN 56-10].

Third, Petty seeks to explore "emails to the company prior to filing this action." [DN 53 at 2, 5]. However, "Bluegrass produced all non-privileged documents pertaining to the subpoena of Petty's text message content or subpoenas by Petty to Bluegrass." [DN 56-7]. The Court has no reason to believe this would not include email.[4]

Fourth, Petty requests "company protocols for responding to legal requests that [sic] were put into place in 2018."[5] [DN 53 at 5]. The analysis of the second request applies in full here, however, Bluegrass also provided dates of changes and indicated the non-privileged information as to why those changes were made, specifically. [DN 56-7]. Thus, this is not a reason Petty should be entitled to the depositions.

Fifth, Petty seeks to explore industry standards relating to text message retention. [DN 53 at 5]. Though this is not the purpose of a 30(b)(6) deposition. Indeed, the subpoena entitles Petty to "information known or reasonably available to the organization." FED. R. CIV. P. 30(b)(6). Thus, even assuming the sought discovery was relevant to the present action, it lies outside the limitations of the discovery rule. Additionally, to the extent that Petty seeks this testimony through a deposition of Ron Smith in his personal capacity, this, too, is outside the scope of discovery. While the information may be relevant to Petty's claims and Bluegrass' defenses, it is certainly

---

[4] It appears to the Court that Petty might instead be speaking to the emails that she sent directly to Ron Smith. However, this too was produced and there is no probative value in the email authored by Plaintiff where Ron Smith did nothing but forward the correspondence to the correct recipients. [DN 56-11]

[5] Petty states that "Mrs. Sanders suggested that the updated protocols were drafted by company executives but could not speak to the circumstances[.]" [DN 53 at 5]. The extent that this would implicate Ron Smiths knowledge is limited in part because the veracity of this statement is untrue to the Court—particularly given that this testimony is uncited, that Defendant's outlined these changes, and that other deponent testimony cited by Petty fails to support her briefing. *See supra* at 13.

not proportional to the needs of the case when considering the relevant factors.  Particularly, Ron

Smith's access to this information and the importance of the discovery in resolving the issues

demonstrate that the burden of the deposition outweighs its likely benefit.  FED. R. CIV. P. 26(b)(1).

Accordingly, this information does not entitle Petty to depose Ron Smith in either a 30(b)(6) or in

his personal capacity.

Sixth, Petty seeks to obtain information on "any company effort to inform third-parties of

a massive data breach."  [DN 53 at 5].  Here, Petty does not elaborate on what she seeks, however,

it is likely she is referring to the production of her own text messages in compliance with a legal

subpoena.  Regardless, the sought material, without any description or explanation, cannot be said

to be relevant to the claim or proportional to the case.

Seventh, Petty asserts that she would like to explore "other matters relevant to this action."

[DN 53 at 2-3].  Bluegrass responded: "There is no meaningful way for Bluegrass to prepare a

corporate witness to testify generally about 'other matters relevant to this action."  This Court

agrees.  Rule 30 requires the moving party to "describe with reasonable particularity the matters

for examination[;]" precluding catch-all categories.  FED. R. CIV. P. 30(b)(6).

Additionally, Petty asserted a more comprehensive listing of her reasons, without analysis,

in her reply.  The Court does not interpret this rephrasing to substitute new reasons for the relief

sought; however, to the extent that one might—privacy policies, company protocols, and the

knowledge of company standards would likewise be answered by the second and fourth description

outlined above.  Additionally, Chrissy Sanders, Thomas Daugherty, and Robin Fentress could have

been questioned about the public disclosures relating to Verizon.  Petty had ample opportunity to

seek this discovery.  Not only that, but it is not clear to the Court why the Verizon disclosures are

at all relevant.

Finally, Petty asserts both that (1) "to accept Defendant's argument, the Court would come to the logical conclusion that any discovery seeking confirming or contradicting evidence should be viewed as unreasonably cumulative and duplicative"; and (2) to the extent the deposition will provide cumulative or duplicative evidence, any repetition will be reasonable." [DN 53 at 8]. As both positions are unsupported and logically circular, the Court is not persuaded.

Therefore, the sought testimony falls outside the scope of discovery. Notably, the issue is not that Petty would like to take a 30(b)(6) deposition and Bluegrass opposes this; instead the issue is that Petty would like to take the deposition *only* if it is of Ron Smith, Bluegrass's highest ranking employee, without attempting any less burdensome avenues. Where Petty cancelled depositions, failed to ask relevant questions, refused to depose any other corporate witness, and attempts gamesmanship, this Court finds the stated discovery to be unreasonably cumulative and duplicative and finds that the party seeking discovery had ample opportunity to obtain the information by discovery in the action. Thus, Petty is not entitled to the depositions.

### *Shelton Forensic Solutions Documents Related to Ms. Petty's Custodial Evaluation*

Information concerning Petty's mental health is relevant and discoverable. As previously stated with relation to both the discoverability of the text message testimony and medical records, while generally there is a privacy right, this was waived when Petty put her emotional distress at issue in this case. *See Maday*, 480 F.3d at 821 (6th Cir. 2007). Here, Petty is claiming that "each text message is an individual violation", [DN 50 at 5], and that her emotional distress damages are "in excess of $2.7 million", [DN 16]. Thus, Bluegrass is entitled to the custodial evaluation and the collateral documents to allow a meaningful challenge to the asserted claims and damages.

17

Petty asserts that the custodial evaluation is "a key piece of evidence" in the appeal of the underlying action and that she "does not wish the evidentiary value of the report to be jeopardized in any way." [DN 70 at 4-5]. Here, compelling Shelton Forensic Solutions to produce the custodial evaluation does not risk the documents "invalidation." Therefore, "invalidation" does not warrant quashing this motion.

Petty claims the evaluation is irrelevant because it evaluates motherhood rather than the emotional injury. [DN 70 at 2]. However, this would be a mischaracterization of the evidence. As Bluegrass points out, the "collateral documentation related to previous court hearings, arrests, medical records, and other issues salient to the … evaluation." [DN 68 at 1, 68-1]. These records are highly relevant to the claims, damages, and Bluegrass's defenses, where they may shed light on her mental health. Thus, the records from Shelton Forensic Solutions are relevant and discoverable.

For the foregoing reasons, **IT IS HEREBY ORDERED**:

1.  Zanda Myers Motion to Quash Subpoena, [DN 34], is **GRANTED**.

2.  Defendant's Motion to Compel Deposition Testimony and Document Production, [DN 39], is **GRANTED**. Morgan Petty shall be available for deposition on the topics of the August 30, 2016 subpoena and communications with her former counsel Zanda Myers. Additionally, Morgan Petty shall supplement her responses to the first request for documents to the extent they were withheld.

3.  Defendant's Motion to Compel Deposition Testimony, [DN 47], is **GRANTED**. Morgan Petty shall be available for deposition on the topic of her text messages, including the identity of persons associated with the texts and circumstances surrounding the texts.

4.      Plaintiff's Motion to Quash, [DN 49], is **DENIED**.

5.      Plaintiff's Motion to Compel Depositions, [DN 53], is **DENIED**.

6.      Defendant's Motion for Protective Order, [DN 55] is **GRANTED**.

7.      Defendant's Motion to Compel Shelton Forensic Solution, [DN 68], is

        **GRANTED**.  Plaintiff's objections to the subpoena are overruled.

**IT IS SO ORDERED.**

April 2, 2021

**Lanny King, Magistrate Judge**
**United States District Court**

c:      Morgan Rae Petty, *pro se*
        Counsel of Record